LISTER, SMITH & WALSH CO. *vs.* HERMAN R. SMITH ET AL.

JANUARY 4, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Baker, Vincent, and Stearns, JJ.

*(1) ° Principal and Agent.   Undisclosed Principal.*

The selling agent of a corporation engaged in the automobile business, duly authorized to conduct its business, can convey good title to a bona fide purchaser for value of an automobile belonging to the corporation, although he may have failed to disclose the fact that in making the sale he was acting as the agent of the corporation.

REPLEVIN.   Heard on exceptions of defendants and sustained.

VINCENT, J.   This is an action of replevin brought in the Superior Court by the Lister, Smith & Walsh Co., a corporation formerly located and doing business in the city of Providence, against Herman R. Smith and the Monahan Vehicle Company for the possession of a certain automobile known as a Napier car.   The action was discontinued against the Monahan Vehicle Company and Thomas L. Briggs was summoned in and made a party defendant in the case.   In addition to the general issue a special plea was filed, setting forth that the Napier car was the property of Thomas L. Briggs.   The plain-

tiff filed a replication denying that the Napier car was
the property of the defendant Briggs, and alleging it
to be the property of the plaintiff. A trial of the case
in the Superior Court resulted in a verdict that the prop-
erty in question was the property of Thomas L. Briggs.
The plaintiff filed a motion for a new trial which was
heard and granted. Upon a second trial a verdict was
rendered for the plaintiff for possession of the Napier
car with $1 damages and costs.

The defendants filed a motion for a new trial which
was heard and denied. The defendants have now
brought their bill of exceptions to this court in which
appear twenty-five assignments of error, two of which
relate to the admission of testimony, fifteen to refusals
to charge, five to portions of the charge, one to the re-
fusal to direct a verdict, and two to the denial of the
motion for a new trial.

In 1909, J. S. Harrington & Co., who were conducting
an automobile business in Boston, established a branch
in Providence, including an office, salesroom and garage,
which they maintained until the fall of 1912 when they
decided to discontinue it. During the maintenance of
the Providence branch, Herman R. Smith and Wilbur R.
Walsh were in the employ of the Harrington Co., the
one as local manager and the other as salesman. Some-
time in July, 1912, apparently the first of that month,
J. S. Harrington & Co. stopped furnishing money for the
pay roll and Smith advanced the funds necessary for
that purpose until September 12, with the evident inten-
tion of holding the organization together until such time
as he and Walsh might be able to interest some person
in the business who would unite with them and furnish
the means to carry it on. Smith and Walsh do not appear
to have transacted any business from July to September
12, 1912.

On October 16, 1912, James J. Lister, Herman R.
Smith and Wilbur R. Walsh executed an agreement pro-

viding for the formation of either a copartnership or a corporation to continue and carry on the automobile business which had been previously conducted in Providence by J. S. Harrington & Co.

In January, 1913, a corporation was formed, called the Lister, Smith & Walsh Co., which carried on the business until October 30, 1914, when a general assignment was made. Prior to the formation of the corporation and prior to the execution of the agreement of October 16, 1912, above referred to, it is claimed by Lister and Walsh, but denied by Smith, that an oral agreement of copartnership was entered into by these three parties in September, 1912. It appears that on September 12, 1912, the sum of $650 was advanced by Mr. Lister to J. S. Harrington & Co., as a deposit to secure the agency for the sale of an automobile known as the Everett and Flanders car. While this deposit of $650 was made by Lister, in the first instance, it was evidently made with the approval and for the benefit of all the parties as Walsh paid one-third of the amount to Lister, in cash, and Smith gave his note to Lister for one-third on the same day, September 12, 1912.

From September 12, 1912, both Lister and Smith advanced money for the pay roll, the amount so advanced by Smith being paid back to him later.

About October 16, 1912, after it was found that the agency of the Everett and Flanders car could not be secured the deposit of $650, or so much thereof as was required for that purpose, was used in the purchase of the assets of J. S. Harrington & Co. in Providence.

It appears from the testimony that one Whitman was the owner of a Napier car which he desired to turn in toward the purchase of a Thomas car. In carrying on, this transaction Smith gave his personal check to the Thomas Motor Car Company as a deposit for a car to be sold to Whitman. This was on September 19, 1912. On September 21 following, Smith by his personal

check for $1,800 paid the balance due on the Thomas car and received from Whitman $2,000 in cash and the Napier car. Smith claims that he was to receive all over $1,850, and that the Napier car was his property and therefore he did not account to the Lister, Smith & Walsh Co. for the $150.

After the completion of this transaction the Napier car was kept at the garage of the Harrington Company, used in its business by different people connected therewith, the gasolene was furnished by the company and the company bore the expense of repairs. The car was run under the company's agency number and was insured by the company under a blanket policy.

There was no bill of sale to the corporation of the assets of J. S. Harrington & Co. and the transactions between Whitman and Smith were not recorded in the books of the company.

Herman R. Smith was the general manager of the Lister, Smith & Walsh Co. and had charge of its business. It is claimed that he had full authority to buy and sell automobiles for the company and that such authority was sufficient to cover the sale of the Napier car. Smith claims to have sold the Napier car to Thomas L. Briggs for $750 in August, 1913. At the time of the purchase the Napier car was at the garage of the company on Chestnut street.

The plaintiff contends (1) that the Napier car was the property of the copartnership and a copartnership transaction and became the property of Lister, Smith & Walsh which passed to the corporation and was not the private transaction of Smith; and (2) that the defendant Thomas L. Briggs was not a *bona fide* purchaser of the Napier car for value without notice.

The formation of the corporation, the Lister, Smith & Walsh Company, occurred at a date later than this transaction under the agreement between these three parties which has before been referred to. It may be

observed, however, that the agreement to form a co-partnership or a corporation at some later date is not necessarily inconsistent with an earlier copartnership association for their common advantage and we think that there is sufficient evidence to show that these parties were acting together in a manner which would amount to a mutual undertaking for their common interest at the time of these transactions with reference to the Napier car.

(1)    At the time Thomas L. Briggs claims that he purchased the Napier car from Smith the latter was acting as the selling agent for the Lister, Smith & Walsh Co. and was apparently duly authorized to conduct its business.

So far as the title of Thomas L. Briggs to the Napier car is concerned, if he was a *bona fide* purchaser for value it would make no material difference whether such car was found to be the private property of Smith or the property of Lister, Smith & Walsh Co. If Smith sold the car to Briggs as a *bona fide* purchaser for value he would be able to convey a good title thereto whether he was acting for himself or for the Lister, Smith & Walsh Co. If the car belonged to Smith he had a right to sell it to Briggs and convey a good title thereto and if the car belonged to the Lister, Smith & Walsh Co. he could, by a sale thereof to Briggs, convey the title of the Lister, Smith & Walsh Co. to him although Smith may have failed to disclose the fact that in making such sale he was acting as the agent of the Lister, Smith & Walsh Co.

The defendants took an exception to the refusal of the court to charge the jury in accordance with their request numbered eleven which is the subject of defendants' exception numbered 12, and is as follows: "If you find that the Napier car was the property of the Lister, Smith & Walsh Company, and Smith sold the same to Briggs as his own personal property, without disclosing the fact of the Lister, Smith & Walsh Company's ownership, Briggs would acquire a good title to the Napier car."

The trial court not only refused to so charge the jury, but did charge them as follows: " Now, if you are satisfied from the evidence that that was a *bona fide* purchase from Mr. Smith, that at the time Mr. Smith sold Mr. Briggs the car, Mr. Smith had the title to this car and not Lister, Smith & Walsh, then you should find for the defendant, Briggs, for the return and restoration of this property."

We think there was error in the refusal to charge and also in what the court actually did charge. As we have before said it would make no difference, so far as the title of Briggs was concerned, whether the Napier car was the personal property of Smith or the property of the Lister, Smith & Walsh Co. which he, Smith, was authorized to sell. From the portion of the charge above quoted and which is the subject of defendants' exception numbered 22, the jury must have understood that they could only find a verdict for Briggs for the return and restoration of the property in the event that they found the ownership of the car to have been in Smith and not in the Lister, Smith & Walsh Co.

We think that this portion of the charge and the refusal to charge in accordance with the defendants' eleventh request constitutes reversible error and that the defendants' exceptions numbered 12 and 22 must be sustained. In this view of the case we find it unnecessary to consider the other exceptions of the defendants.

The defendants' exceptions 12 and 22 are sustained and the case is remitted to the Superior Court with direction to give the defendants a new trial.

*Alfred G. Chaffee,* for plaintiff.
*William H. McSoley,* for defendants.